IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALMA LASERS LTD. and
ALMA LASERS, INC.,

Plaintiffs,

v.

THERMAGE, INC.

Defendant.

C.A. No. 07-224-GMS

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF**
**THEIR MOTION FOR A STAY PENDING REEXAMINATION**

ASHBY & GEDDES

*Of Counsel:*

David T. Pritikin
Thomas D. Rein
Hugh A. Abrams
Constantine Koutsoubas
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
dpritikin@sidley.com
trein@sidley.com
habrams@sidley.com
dkoutsoubas@sidley.com

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Alma Lasers Ltd. and Alma Lasers, Inc.*

Dated: February 17, 2009

# TABLE OF CONTENTS


TABLE OF CITATIONS .......... ii

I. NATURE AND STAGE OF PROCEEDINGS .......... 1

II. SUMMARY OF ARGUMENT .......... 3

III. STATEMENT OF FACTS .......... 5

IV. ARGUMENT .......... 7

A. The Court Has Discretion to Grant a Stay of the Case Pending Completion of a Patent Reexamination. .......... 7

B. The Court Should Stay the Litigation. .......... 7

1. Thermage's Complete Lack of Action over the Last Eight Months Precludes it from Arguing that it Would be Prejudiced by a Stay .......... 8

2. A Stay Would Simplify the Issues and Provide Practical Benefits to the Court .......... 8

3. A Stay Will Not Affect any Deadlines Because There are No Discovery Deadlines or a Trial Date .......... 12

V. CONCLUSION .......... 14

## TABLE OF CITATIONS

### CASES

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*
No. 06-514, 2007 WL. 2892707 (D. Del. Sept. 30, 2007)........................................ passim

*Alloc, Inc. v. Unilin Decor N.V.*,
No. Civ. A. 03-253-GMS, 2003 WL. 21640372 (D. Del. July 11, 2003) ................ passim

*Cost Bros., Inc v. Travelers Indem. Co.*
760 F.2d 58 (3d Cir. 1985)............................................................................................5, 7

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997)........................................................................................11

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988)........................................................................................11

*Emhart Indus. v. Sankyo Seiki Mfg.*,
3 U.S.P.Q.2d 1889, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987) ..........................................7, 8

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)........................................................................................5, 7

*Gioello Enterprises Ltd. v. Mattel, Inc.*,
No. C.A. 99-375 GMS, 2001 WL. 125340 (D. Del. Jan. 29, 2001) .......................... passim

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983)........................................................................................10

*Kaufman Co., Inc. v. Lantech, Inc.*,
807 F.2d 970 (Fed. Cir. 1986)..........................................................................................12

*Nikken USA, Inc. v. Robinsons-May, Inc.*,
51 F. App'x 874 (Fed. Cir. 2002) (non-precedential) ......................................................11

*Pegasus Development Corp. v. DirecTV, Inc.*,
No. Civ. A. 00-1020-GMS, 2003 WL. 21105073 (D. Del. May 14, 2003)............... passim

*Richardson-Vicks Inc. v. Upjohn Co.*,
No. 93-556, 1996 WL. 31209 (D. Del. Jan. 17, 1996) ....................................................12

*Seattle Box Co., Inc. v. Industrial Crating and Packing Inc.*,
756 F.2d 1574 (Fed. Cir. 1985)........................................................................................12

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
No. Civ. A. 01-557 JJF, 2003 WL. 25283239 (D. Del. Jan. 30, 2003) ............................13

*TAP Pharm. Products., Inc. v. Atrix Laboratories, Inc.*,
70 U.S.P.Q. 2d 1319, 2004 WL. 422697 (N.D. Ill. Mar. 3, 2004) ......................................9

*Xerox Corp. v. 3 Com Corp.*,
69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...................................................................5, 8

**STATUTES**

35 U.S.C. § 252.........................................................................................................12

35 U.S.C. § 307.........................................................................................................11

35 U.S.C. § 316.........................................................................................................12



{00274640;v1}

## I. NATURE AND STAGE OF PROCEEDINGS

On April 26, 2007, plaintiffs Alma Lasers, Inc. and Alma Lasers Ltd. ("Alma") filed a declaratory judgment complaint seeking a declaration of invalidity and noninfringement of 9 patents owned by defendant Thermage, Inc. (D.I. 1, Complaint at ¶¶ 11-55.) On June 20, 2007, Thermage filed a counterclaim asserting infringement of two additional patents, but not alleging infringement of one of the patents in the original complaint. (D.I. 8, Answer and Counterclaims at ¶¶ 19-70.) On December 10, 2007, Thermage amended its counterclaim to allege infringement of one additional patent, which issued on September 11, 2007, bringing the total number of patents in suit to eleven.[1] (D.I. 36, Amended Answer and Counterclaims at ¶¶ 17, 20-75.)

On August 16, 2007, Magistrate Judge Thynge entered a discovery schedule for this case. (D.I. 24, Scheduling Order.) Among the deadlines entered by Judge Thynge were a series of dates for Thermage to narrow the number of claims asserted in the case -- from 167 on December 31, 2007 to 20-25 on July 1, 2008. (*Id.* at ¶ 11(a).) In accordance with the discovery schedule, the parties exchanged discovery requests and began the production of documents. No depositions have been taken in the case.

On February 1, 2008, this case was reassigned from Magistrate Judge Thynge to Chief Judge Sleet of this Court. On February 8, 2008, the Court rescinded the previous scheduling order entered by Magistrate Judge Thynge. (D.I. 46, Order at ¶ 1.) Alma understood that the Court's Order did *not* stay discovery and Alma continued with the process of producing documents and serving discovery requests. Thermage apparently disagreed with Alma's

---

[1] The final list of Thermage patents include U.S. Patent Nos. 5,660,836, 5,755,753, 6,241,753, 6,377,855, 6,381,498, 6,387,380, 6,405,090, 6,749,624, 7,189,230, 7,229,436, and 7,267,675.

interpretation of the Court's February 8, 2008 Order. On June 16, 2008, Thermage Inc. ("Thermage") objected to Alma's interrogatory "as seeking discovery after all case deadlines have been suspended (see D.I. 46), at a time when there is no discovery schedule in place." (Declaration of Constantine Koutsoubas in Support of Pls.' Mot. for Stay Pending Reexamination (Feb. 16, 2009) ("Koutsoubas Decl."), Ex. 1, Def.'s Resp. to Pls.' Second Set of Interrogs. (Interrog. No. 14) (Jun. 16, 2008); *see also* Koutsoubas Decl., Ex. 2; Correspondence between T. Rein and A. Blatt (Letter from T. Rein to A. Blatt (Feb. 29, 2008) and E-Mail Response from A. Blatt to T. Rein (Mar. 3, 2008)).) Based on Thermage's response, no further discovery requests or responses have been served by the parties since June 16, 2008.

In the interim, Alma decided to seek reexamination of the asserted patent claims in the United States Patent and Trademark Office ("PTO"). On May 9, 2008, Alma filed the first of eleven separate reexamination requests, which seek reexamination of all 153 claims that remain asserted by Thermage in this case.[2] On July 18, 2008, the PTO granted the first of the 11 reexamination requests and, since that time, the PTO has granted 9 additional reexamination requests.[3] Only one request for reexamination remains pending in the PTO.[4] It relates to the 24

---

[2] (Koutsoubas Decl., Ex. 3, Request for *Ex Parte* Reexamination Transmittal Forms for U.S. Patent Nos. 5,660,836 (May 9, 2008), 6,387,380 (May 9, 2008), 5,755,753 (May 9, 2008), 6,241,753 (May 15, 2008), 6,405,090 (May 15, 2008), 6,381,498 (May 19, 2008) and 6,377,855 (May 19, 2008); Koutsoubas Decl., Ex. 4, Request for *Inter Partes* Reexamination Transmittal Forms for U.S. Patent Nos. 7,189,230 (June 11, 2008), 7,267,675 (June 19, 2008), and 7,229,436 (July 9, 2008); Koutsoubas Decl. Ex. 5, Request for *Inter Partes* Reexamination Transmittal Form for U.S. Patent No. 6,749,624 (July 31, 2008).)

[3] (Koutsoubas Decl. Ex. 6, Orders Granting Request for *Ex Parte* Reexamination for U.S. Patent Nos. 5,755,753 (July 18, 2008), 6,377,855 (July 18, 2008), 6,381,498 (July 18, 2008), 6,405,090 (July 18, 2008), 5,660,836 (July 24, 2008), 6,387,380 (July 24, 2008), and 6,241,753 (Aug. 4, 2008); Koutsoubas Decl., Ex. 7, Orders Granting Requests for *Inter Partes* Reexamination for U.S. Patent Nos. 7,267,675 (Aug. 12, 2008), 7,189,230 (Sept. 10, 2008), and 7,229,436 (Sept. 26, 2008).)

asserted claims of the '624 patent, and a ruling is expected in February 2009 based on the PTO's standing practice that rulings on requests for reexamination are issued within 90 days. (Koutsoubas Decl., Ex. 10, Notice of *Inter Partes* Reexamination Request Filing Date (Dec. 16, 2008) ("A decision on the request for *inter partes* reexamination will be mailed within three months from the filing date of the request for *inter partes* reexamination.").)

As the reexamination proceedings progressed, this case remained at a standstill. Several months ago, Alma indicated to Thermage that Alma intended to seek a stay of the case pending completion of the reexaminations, and that Alma intended to file its request for a stay after receiving rulings on all 11 requests for reexamination. After receiving this Court's February 12, 2009 Order setting the Rule 16 Conference for February 19, 2009, Alma asked Thermage whether it would agree to a stay. When first approached, Thermage said that it would oppose such a request; more recently, however, Thermage indicated that it may be amenable to a six to eight month stay. (D.I. 60, Joint Status Report, ¶ 4.)

## II. SUMMARY OF ARGUMENT

1. In an attempt to narrow the issues before this Court, Alma petitioned the United States Patent and Trademark Office ("PTO") to reexamine each of the **153** patent claims in the eleven separate patents that Thermage has asserted in this case. The PTO has granted all but one

---

[4] The *inter partes* reexamination request for U.S. Patent No. 6,749,624, which challenged twenty-five claims, was initially filed on July 31, 2008. (Koutsoubas Decl, Ex. 5.) However, the PTO vacated the filing date on October 27, 2008, citing various irregularities in the request. (Koutsoubas Decl., Ex. 8, Decision *Sua Sponte* Vacating *Inter Partes* Reexamination Filing Date (Oct. 27, 2008).) Alma filed a corrected petition on November 26, 2008, and is currently awaiting a response to that petition. (Koutsoubas Decl., Ex. 9, Third-Party Requester's Response to Decision Vacating Reexamination Filing Date at 1 (Nov. 26, 2008).)

of those reexamination requests.[5] And, one of the reexamination proceedings has already concluded with PTO cancelling (effectively invalidating) the single claim in that patent under reexamination – already narrowing the issues for this Court. Further, in Office Actions in pending reexaminations, the PTO has rejected 36 of the 153 remaining asserted claims. Other reexaminations await issuance of office actions. Alma submits that the PTO reexamination process, which has already significantly narrowed the issues for this Court, should be allowed to continue to completion.

2. This case has been effectively stayed for the past eight months because Thermage, the patent holder, has done nothing to advance this case. In fact, Thermage has taken the position that this Court suspended discovery on February 8, 2008 – more than one year ago – and never made any attempt to move this case forward. In light of Alma's intentions to move the Court for a stay pending the reexaminations, Alma has not pursued further discovery.

3. Having allowed this case to remain dormant, Thermage is in no position to contend that it will be prejudiced by a stay while the reexaminations run their course. Nor can Thermage dispute that there would be substantial economy and efficiency gains for the parties and the Court if this case is stayed pending the completion of the reexaminations. As explained below, the reexaminations will simplify this case, if not obviate the dispute completely. And, a stay will not affect any preexisting deadlines.

4. As this Court is aware, courts have the power to stay cases. *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 06-514 GMS, 2007 WL 2892707, at *4 (D. Del. Sept. 30,

[5] One reexamination request remains pending. Alma intended to wait until the PTO granted all of the reexamination requests before bringing this Motion. This Court's order for a scheduling conference on February 11, 2009 (D.I. 59), however, prompted Alma to file this Motion now.

2007) (Sleet, J.) (citing *Cost Bros., Inc v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985)). This, of course, includes the authority to stay a case pending the conclusion of reexaminations. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). In exercising its discretion, a court is to be guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Abbott*, 2007 WL 2892707 at *4 (quoting *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)). All three of these factors favor granting a stay in this case.

5. As this Court has noted in its prior decisions, a stay pending reexamination will almost always simplify the issues at trial. *Alloc, Inc. v. Unilin Décor N.V.*, No. Civ. A. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (Sleet, J.); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. Civ. A. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (Sleet, J.); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001). As a consequence, there are many benefits and efficiencies to be gained by waiting for the PTO to finish its reexaminations of the challenged claims. *Alloc*, 2003 WL 21640372 at *2. Given the early status of this case and Thermage's inactivity, a stay would be appropriate, as explained in more detail below.

## III. STATEMENT OF FACTS

On September 17, 2007, Thermage limited its asserted claims to 152 patent claims. (Koutsoubas Decl., Ex. 11, Def.'s Resps. to Pls.' First Set of Interrogs. (Sept. 17, 2007).) Thermage added two more patent claims when it filed its Amended Answer on December 10, 2007 and asserted claims 1 and 2 of U.S. Patent No. 7,267,675, bringing the total number of

asserted claims to 154. (D.I. 36, Amended Answer and Counterclaims at ¶ 73.) In a supplement to its response to Alma's interrogatory, however, Thermage provided infringement contentions that reduced the number of asserted claims to 153 as it withdrew claim 2 of U.S. Patent No. 7,267,675. Under the rescinded scheduling order, Thermage was to reduce its asserted claims to 83 by March 3, 2008 (D.I. 24, Scheduling Order at ¶ 11(a)(2)); however Thermage refused to do so citing this Court's order rescinding the scheduling order. (Koutsoubas Decl., Ex. 2.)

Shortly thereafter, Alma started preparing its reexamination petitions in an attempt to narrow the issues in this case. The first petitions were filed on May 9, 2008, and the final reexamination petition was filed on July 31, 2008. (*See* Koutsoubas Decl., Exs. 3-5.) Four out of the eleven reexamination petitions were *inter partes* reexaminations, which allow Alma to participate in those proceedings. (*See* Koutsoubas Decl., Exs. 4 and 5.) The PTO has granted all of the *ex parte* reexamination requests and all but one of the *inter partes* reexamination requests. (Koutsoubas Decl. Exs. 6 and 7.)

As a result of these reexaminations, the PTO and Thermage have already cancelled many of the challenged claims, effectively removing them from the case. (Koutsoubas Decl., Ex. 12, Amendment in Reexamination of U.S. Patent No. 7,189,230 (Nov. 10, 2008) ("'230 Amendment"); Koutsoubas Decl., Ex. 13, Amendment in Reexamination of U.S. Patent No. 7,229,436 (Nov. 26, 2008) ("'436 Amendment"); Koutsoubas Decl, Ex. 14, Notice of Intent to Issue *Inter Partes* Reexamination Certificate for U.S. Patent No. 7,267,675 (Jan. 13, 2009) ("'675 NIRC") (cancelling claim 1).) And, the PTO has already terminated the proceedings for U.S. Patent No. 7,267,675, cancelling the only challenged claim at issue in that patent. (Koutsoubas Decl., Ex. 14.) Each of the Office Actions in the pending reexaminations rejected all of the challenged claims, amounting to 36 of the 153 remaining asserted claims. (Koutsoubas Decl.,

Ex. 15, Office Action in *Inter Partes* Reexamination for U.S. Patent No. 7,189,230 at 1 (Sept. 10, 2008); Koutsoubas Decl., Ex. 16, Office Action in *Inter Partes* Reexamination for U.S. Patent No. 7,229,436 at 1 (Sept. 26, 2008).)

## IV. ARGUMENT

### A. The Court Has Discretion to Grant a Stay of the Case Pending Completion of a Patent Reexamination.

"The decision to stay a case is firmly within the discretion of the court." *Abbott*, 2007 WL 2892707 at *4 (citing *Cost Bros.*, 760 F.2d at 60); *Alloc*, 2003 WL 21640372 at *2 (citing *Cost Bros*, 760 F.2d at 60); *Pegasus*, 2003 WL 21105073 at *1 (citing *Cost Bros*, 760 F.2d at 60). "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon*, 849 F.2d at 1426-27; *see also Abbott*, 2007 WL 2892707, at *4 ("This authority applies equally to patent cases in which a reexamination by the PTO has been requested." (citing *Ethicon*, 849 F.2d at 1426-27)); *Alloc*, 2003 WL 21640372 at *2 (same); *Pegasus*, 2003 WL 21105073 at *1 (same). Indeed, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion." *Alloc*, 2003 WL 21640372 at *2 (quoting *Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987)); *Pegasus*, 2003 WL 21105073 at *1 (quoting *Emhart*, 3 U.S.P.Q.2d at 1890).

### B. The Court Should Stay the Litigation.

"In determining whether a stay is appropriate, the court's discretion is guided by the following factors: '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and

trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Abbott*, 2007 WL 2892707 at *4 (quoting *Xerox*, 69 F. Supp. 2d at 406). Here, all three factors favor granting a stay.

*1. Thermage's Complete Lack of Action over the Last Eight Months Precludes it from Arguing that it Would be Prejudiced by a Stay*

Since at least June 16 2008, Thermage has done absolutely nothing to advance this litigation. Indeed, Thermage has taken the position that discovery has been suspended since this Court's order of February 8, 2008. (*See* Koutsoubas Decl., Exs. 1 and 2.) If Thermage was being seriously harmed by Alma's alleged infringement, it would not have sat on its hands for the last eight months. Moreover, if it were suffering irreparable harm, Thermage would have sought a preliminary injunction. *Emhart*, 1987 WL 6314 at *2 (rejecting argument of prejudice by noting that money damages would provide an adequate remedy for harm resulting from stay where plaintiff never sought preliminary injunction). Thermage's failure to seek a preliminary injunction and vigorously litigate this case undermines any possible argument that it would be unduly prejudiced or placed at a tactical disadvantage if this case is stayed pending the outcome of the reexaminations. Further, Thermage's willingness to discuss a temporary stay of six to eight months (D.I. 60, Joint Status Report, ¶ 4) is a direct admission that Thermage will not be unduly prejudiced by a delay.

*2. A Stay Would Simplify the Issues and Provide Practical Benefits to the Court*

This Court has previously extolled the benefits of reexamination in simplifying the issues. *Alloc*, 2003 WL 21640372 at *2; *Pegasus*, 2003 WL 21105073 at *2; *Gioello*, 2001 WL 125340 at *1. Those benefits are particularly applicable here. Thermage is accusing Alma of infringing 153 patent claims in this case. Alma challenged all of those claims in *ex parte* and

*inter partes* reexaminations. Even if all Alma's challenges are not successful, waiting for the conclusion of the reexaminations undoubtedly would narrow the number of claims at issue in this case.

Even with respect to surviving claims, the reexaminations may have a significant effect on the validity and infringement issues before the Court, as well as the attendant discovery burdens. As this Court has itself noted, potential efficiencies associated with staying an action until the PTO completes a reexamination include: (1) the alleviation of discovery problems relating to the prior art; (2) the reexamination may reduce the complexity and length of litigation; (3) the limitation of issues, defenses, and evidence; (4) the encouragement of settlement; and (5) the dismissal of the suit if the patent is declared invalid. *Alloc*, 2003 WL 21640372 at *2 (citing *Pegasus*, 2003 WL 21105073 at *2).

"Such a refinement of the issues will benefit both parties by reducing litigation costs [and] best conserve the court's scarce resources." *Alloc*, 2003 WL 21640372 at *2 (citing *Pegasus*, 2003 WL 21105073 at *2); *see also TAP Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320, 2004 WL 422697, at *2 (N.D. Ill. Mar. 3, 2004) ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of issues will allow *both parties* to conserve time and resources."). By contrast, "[n]ot staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions." *Gioello*, 2001 WL 125340 at *1.

In addition, much of the "prior art presented to the court at trial will have been first considered by the PTO with its particular expertise." *Id*. As the Federal Circuit noted, "[o]ne

purpose of the reexamination procedure is to . . . facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (Markey C.J.) *quoted by Abbott*, 2007 WL 2892707 at *5. *See also Alloc*, 2003 WL 21640372 at *2.

Particularly instructive here is this Court's decision in *Pegasus*. There, the patentee filed a complaint alleging infringement of six patents involving dozens of claims. *Pegasus*, 2003 WL 21105073 at *1. One of the defendants, in turn, filed reexamination petitions for two of those patents. *Id.* In ruling on a motion for a stay, this Court held that a stay was warranted under the circumstances, noting:

> Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources.

*Id.* at *2.

So too here. Thermage has accused Alma in this case of infringing 153 patent claims from eleven different patents from two patent families. Alma has challenged all of those patent claims through reexamination. The PTO has already ordered the reexamination of all but one of the patents, finding substantial new questions of patentability on all of the challenged claims. There is little doubt that the reexaminations will simplify and streamline the issues for trial, thereby reducing the burden of litigation on both the parties and the Court. Indeed, as a result of the reexaminations, U.S. Patent No. 7,267,675 is being dropped by Thermage and Thermage has cancelled a number of its other patent claims. (Koutsoubas Decl., Ex. 12, '230 Amendment at 5;

Koutsoubas Decl., Ex. 13, '436 Amendment at 6; Koutsoubas Decl, Ex. 14, '675 NIRC.) Moreover, Thermage has amended many of its claims to the '436 and '230 patents in response to rejections from the PTO. (Koutsoubas Decl., Ex. 12, '230 Amendment at 1-5; Koutsoubas Decl., Ex. 13, '436 Amendment at 1-6.) This is not unusual, and will likely continue as the reexaminations move forward.

In addition to the benefits set forth by this Court in *Alloc*, *Pegasus*, and *Gioello*, there are additional practical reasons for granting a stay, which directly go to the merits of the litigation. First, statements Thermage makes during each reexamination proceeding will be relevant to claim construction because those statements become part of the prosecution history and part of the intrinsic evidence this Court would use to determine the meaning of the claims. *Nikken USA, Inc. v. Robinsons-May, Inc.*, 51 F. App'x 874, 884 (Fed. Cir. 2002) (non-precedential) ("[S]tatements made during the prosecution history, *including reexamination proceedings*, are relevant to determining claim scope." (emphasis added) (citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988)); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F. 3d 1146, 1158 (Fed. Cir. 1997). Thus, while the reexaminations are pending, the intrinsic evidence this Court will use for claim construction is constantly evolving. If Thermage or the PTO do <u>anything</u> during the reexaminations after this Court construes the claims, then this Court may have to revisit its construction. A stay would obviate this.

Finally, if Thermage amends the claims to survive the reexamination proceedings, Thermage's ability to recover damages and seek an injunction may be severely limited. Thermage cannot use claims amended during reexamination that are not "identical" to the original claims as a basis for infringement that occurred before the issuance of the reexamination certificate. 35 U.S.C. § 307 (noting any new or amended claims have the "same effect as that

specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used . . . anything patented by such proposed amended or new claim."); 35 U.S.C. § 316(b) (same for *inter partes* reexaminations); 35 U.S.C. § 252 (discussing intervening rights with respect to reissued patents). *See also Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 976-78 (Fed. Cir. 1986) ("[35 U.S.C. § 252] makes clear that if the claims in the original and reissued patents are 'identical,' the reissued patent is deemed to have effect from the date of the original patent. If not, then the patentee has no rights to enforce before the date of reissue because the original patent was surrendered and is dead.") (discussing the effect of claims amended during reexamination).

Moreover, after reexamination, Thermage may be limited in its ability to obtain an injunction against future infringements. 35 U.S.C. § 252; *Seattle Box Co., Inc. v. Industrial Crating and Packing Inc.*, 756 F.2d 1574, 1579-80 (Fed. Cir. 1985) (discussing equitable intervening rights); *Richardson-Vicks Inc. v. Upjohn Co.*, No. 93-556, 1996 WL 31209, at *7 (D. Del. Jan. 17, 1996), *aff'd*, 122 F.3d 1476 (Fed. Cir. 1997) (Robinson, J.) (allowing an accused infringer to continue practicing the invention covered by a claim amended during reexamination because of significant pre-reexamination investments). In short, the reexaminations may significantly alter the value of this case to Thermage and affect its desire to actually litigate this case. To proceed forward with this litigation in parallel with the reexamination proceedings would be to risk wasting the resources of both the Court and the parties in litigating issues that are ultimately rendered moot or worthless.

### *3. A Stay Will Not Affect any Deadlines Because There are No Discovery Deadlines or a Trial Date*

The reexaminations were filed after this Court's February 8, 2008 Order vacating all scheduling dates, before this Court ordered a Rule 16 scheduling conference, before this Court

entered a new scheduling order, and before this Court set a trial date. In addition, little progress had been made in discovery due to Thermage's own insistence that discovery should not move forward. No depositions have taken place and there has been no expert discovery. The only significant discovery, outside of document production, was the exchange of detailed infringement and invalidity contentions – and it was the invalidity contentions that prompted the reexaminations.

Courts grant stays under these circumstances. *See Abbott*, 2007 WL 2892707 at *5 (granting stay pending reexamination "where the court has not yet conducted a Rule 16(2)(b) scheduling conference, no scheduling Order is in place, no discovery has taken place, and little time has yet to be invested in the litigation"); *Alloc*, 2003 WL 21640372, at *3 ("Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses."). *Cf. St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. Civ. A. 01-557 JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (denying stay where "discovery is complete and the trial date is weeks away and therefore, the delay that will result while the reexamination proceedings go forward will unduly prejudice [plaintiff] in the presentation of its case.").

Indeed, courts have granted stays when there would have been far more disruption to the trial schedule than would occur here. *See Pegasus*, 2003 WL 21105073 at *3 (reexaminations filed when case was two years old); *Gioello*, 2001 WL 125340 at *1-2 (finding that "the prejudice to [the non-moving party] is slight" despite discovery being nearly complete and a trial date having been set.").

## V. CONCLUSION

For the reasons set forth above, this Court should grant Alma's motion for a stay in the litigation pending the conclusions of all of the reexaminations of the patents in suit.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for Alma Lasers Ltd. and Alma Lasers, Inc.*

*Of Counsel:*

David T. Pritikin
Thomas D. Rein
Hugh A. Abrams
Constantine Koutsoubas
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
trein@sidley.com
habrams@sidley.com
dkoutsoubas@sidley.com

Dated: February 17, 2009